UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREW FRANKLIN<br>2707 P Street, NW<br>Washington, DC 20007<br><br>    Plaintiff,<br><br>    v.<br><br>CCTV AMERICA<br>(aka CENTURIAL MEDIA HOLDINGS)<br>1099 New York Avenue, NW<br>Washington, DC 20001<br><br>    Defendant. | Civil Action No. _____<br><br>Judge: _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Andrew Franklin, by and through counsel, to hereby file this Complaint against Defendant CCTV America (aka Centurial Media Holdings), hereinafter CCTV or Defendant. In support of said Complaint Mr. Franklin states as follows:

### PARTIES

1. Plaintiff Andrew Franklin is a resident of the District of Columbia residing at 2707 P Street, NW, Washington, DC 20007.

2. Defendant CCTV America (aka Centurial Media Holdings) is the American division of the Chinese state broadcaster China Central Television, with an address of 1099 New York Avenue, NW, Washington, DC 20001.

### JURISDICTION AND VENUE

3. This court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and the Americans with Disabilities Act.

1

4. This court has personal jurisdiction over Defendant CCTV because Defendant is an employer engaged in business in this judicial district. Defendant is engaged in an industry affecting commerce, employing more than 15 employees during 2015.

5. Venue is proper in this court because Defendant does business in this judicial district and a substantial portion of the records, personnel and actions alleged herein occurred in this district.

## FACTUAL ALLEGATIONS

6. Prior to his termination on August 6, 2015 Andrew Franklin worked at CCTV America as a Studio Engineer. Mr. Franklin had been employed in this position since January, 2014. Mr. Franklin's supervisor was Sam Vasa.

7. During 2014, after going to work for CCTV Mr. Franklin was diagnosed with Attention Deficit / Hyperactivity Disorder and a Cognitive Disorder which slowed his ability to process information.

8. On January 26, 2015 Mr. Franklin was given a performance appraisal by Mr. Vasa. In each performance category Mr. Vasa rated Mr. Franklin at either the "Meets Expectations" or "Exceeds Expectations" level.

9. On or around May 21, 2015 Mr. Franklin disclosed his medical conditions to Ursula Perales, CCTV's Senior Human Resources Manager.

10. Mr. Franklin discussed possible reasonable accommodations with Ms. Perales, including reconfiguring his work station and studio computer to help him stay organized and reduce distractions.

11. Mr. Franklin also discussed these changes with Mr. Vasa, who gave his approval. However when Mr. Franklin made the discussed changes Mr. Vasa complained

and had them removed. No accommodations were ever implemented at Mr. Franklins work station.

12. On May 27, 2015, CCTV requested more information regarding Mr. Frankin's disability. In response Mr. Franklin provided a detailed report from his physician, Dr. Sid Binks.

13. Dr. Binks report recommended accommodations CCTV could implement to compensate for Mr. Franklin's conditions. The recommended accommodations included limiting distractions and structuring Mr. Franklin's tasks to help him stay organized.

14. Mr. Franklin continued to discuss appropriate accommodations in accordance with Dr. Binks' report and earlier requests. No accommodations of any sort were ever implemented.

15. On June 18, 2015 Mr. Franklin discussed his accommodations request with Mr. Vasa. Later that day Mr. Vasa issued Mr. Franklin a Corrective Action Notice (Notice) alleging that Mr. Franklin had not been "present" during scheduled shows.

16. Some of the alleged incidents described in the June 18 Notice were several weeks old. No record of these alleged incidents was noted.

17. On July 27, 2015, Mr. Franklin filed a Charge of Discrimination (Charge) with the D.C. Office of Human Rights and Washington Field Office of the Equal Employment Opportunity Commission (EEOC). The Charge stated that Mr. Franklin had suffered discrimination based on disability, and retaliation after requesting accommodations, including the June 18 Notice.

18. On August 6, 2015 Mr. Vasa issued another Notice. This Notice alleged that Mr. Franklin had been 25 minutes late for his shift.

19. The Notice stated that further incidents "will lead to further disciplinary action which in all likelihood would take the form of termination of your employment." This statement shows that Mr. Franklin's termination was still a potential, future event when the August 6 Notice was issued.

20. On August 6, 2015 at 2:21 pm Mr. Franklin sent an e-mail to Mr. Vasa disputing the claims in the August 6 Notice. Mr. Franklin stated that he would amend his previously filed charge "to reflect this incident, as I believe the timing, discrepancies, and differential treatment we discussed altogether indicate this is a retaliatory act."

21. Mr. Franklin was terminated approximately one hour later.

22. After his termination Mr. Franklin timely amended his previously filed Charge with the EEOC to include the August 6 Notice and his termination.

23. On April 13, 2016, the EEOC issued a Dismissal and Notice of Rights. Mr. Franklin received this "Right to Sue" letter on April 16, 2016.

## CAUSES OF ACTION

### Count One (Failure to Provide Reasonable Accommodation)

24. Mr. Franklin hereby re-states and re-alleges paragraphs 1 through 23 of this Complaint as if fully set forth herein.

25. Mr. Franklin was a qualified individual able to perform the essential duties of a Studio Engineer at CCTV.

26. Mr. Franklin's conditions, Attention Deficit / Hyperactivity Disorder and Cognitive Disorder, are "disabilities" within the definition of the ADA.

27. Mr. Franklin properly informed his employer, CCTV, of his disability and requested accommodation.

28. The accommodations Mr. Franklin suggested and Dr. Binks recommended including reducing distractions, restructuring tasks and workspaces would have been reasonable, beneficial and inexpensive.

29. CCTV failed to provide these or any other reasonable accommodation of Mr. Franklin's disability.

**Count Two (Retaliation)**

30. Mr. Franklin hereby re-states and re-alleges the paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31. The June 18, 2015 Notice was issued only hours after Mr. Franklin discussed his accommodation request with his supervisor, Sam Vasa.  This shows a causal connection between the June 18, 2015 Notice and Mr. Franklin's request for accommodation.

32. The Notice of June 18, 2015 was sufficiently severe that it might have discouraged a reasonable worker from requesting an accommodation.

33. The August 6, 2015 Notice was issued ten days after Mr. Franklin filed his formal Charge of Discrimination with the EEOC.  This shows a causal connection between the August 6, 2015 Notice and Mr. Franklin filing his Charge.

34. The Notice of August 6, 2015 was sufficiently severe that it might have discouraged a reasonable worker from filing a Charge or otherwise engaging in protected activity.

35. Mr. Franklin's employment with CCTV was terminated about an hour after he informed his supervisor that he believed the August 6, 2015 Notice was retaliatory and would amend his EEOC Charge on that basis.   This shows a causal connection between Mr. Franklin's termination, his filing a Charge with the EEOC, including a charge of retaliation regarding the August 6 Notice.

36. Mr. Franklin's termination was sufficiently severe that it might discourage a reasonable worker from engaging in protected activity.

## JURY TRIAL DEMAND

37. Mr. Franklin demands a trial by jury on all issues that may be tried by jury.

## RELEIF REQUESTED

38. **WHEREFORE,** Plaintiff Andrew Franklin respectfully requests a compensatory judgment against Defendant CCTV in the amount of $300,000, punitive damages to be determined at trial, plus costs, attorney's fees, and such other relief as is just and proper.

Respectfully submitted,

/s/ Edward J. Elder
Edward J. Elder (Bar #460588)
2000 P Street, NW
Suite 415
Washington DC 20036
202-957-8257
eelder.esq@earthlink.net
Counsel for Andrew Franklin

6